# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOE ARMIJO ,

   **Plaintiff,**

v.                No.  98cv0913 LH/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

   **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

  This matter is before the Court on Plaintiff's (Armijo's) Motion to Reverse and Remand Administrative Decision, filed June 7, 1999. The Commissioner of Social Security issued a final decision denying Armijo's application for Supplemental Security Income benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion is not well taken and recommends that it be DENIED.

  Armijo, now 57 years old, filed his application for Supplemental Security Income benefits on November 2, 1994, alleging disability since October 15, 1991.  Armijo claimed the following impairments: 1) chronic low back pain; 2) numbness in both legs; 3) alcoholism; and 4) liver problems.  On  April 4, 1996, the Commissioner's Administrative Law Judge (ALJ) denied benefits because he found Armijo had a severe impairment, but the impairment did not meet or equal a Listing of Impairments.  The ALJ then found Armijo could not perform his past relevant

work, but that he could perform light work and therefore was not disabled.  On July 14, 1998, the Appeals Council concluded there was no basis under Social Security Administration regulations for granting Armijo's request for review.  Thus, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Armijo seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

In his April 4, 1996 decision, the ALJ found that although Armijo had severe medically determinable impairments, he did not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.  Tr. 11.

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand, Armijo argues the following: 1) the residual functional capacity (RFC) finding is not supported by substantial evidence and is contrary to law; 2) the ALJ failed to develop the record regarding Armijo's RFC; and 3) the ALJ's credibility determination is not supported by substantial evidence and is contrary to law.

## Residual Functional Capacity

At the fifth and final step of the sequential evaluation, the ALJ must determine whether Armijo has the RFC "to perform other work in the national economy in view of his age, education, and work experience." *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987). Work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. At this step, the Secretary bears the burden of proof. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). "A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Id.* To meet this burden, the Secretary may rely on the Medical-Vocational Guidelines (grids), 20 C.F.R., pt. 404, Subpt. P, App. 2 (1986), which consider a claimant's RFC in relation to his age,

education, and work experience. *Id.*

The ALJ first determines the type of work, based on physical exertion requirements, that the claimant has the RFC to perform. "To determine the claimant's RFC category, 'the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work).'" *Williams v. Bowen*, 844 F.2d at 752. After the decision maker places a claimant in a particular RFC, the decision maker than turns to the grids which direct a conclusion as to whether a claimant is or is not disabled. *Id.* However, when a claimant suffers both exertional and nonexertional limitations[1] and the exertional limitations in and of themselves do not establish disability, the grids provide no more than a framework for determining disability and may not be applied conclusively. *Id.* Therefore, "if a significant number of jobs presumed by the grids to exist for a claimant cannot be performed on a continuing and regular basis because of the claimant's nonexertional limitations, the claimant may be disabled even though he may be exertionally capable of meeting the strength requirements of those jobs." *Id.*

In this case, the ALJ found Armijo had the RFC to perform the exertional requirements of light work.[2] Tr. 12. Armijo argues that the ALJ's finding of an RFC for light work is not

---

[1] "Nonexertional limitations may include or stem from sensory impairments; epilsepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain." *Williams v. Bowen,* 844 F.2d at 752.

[2] Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must

supported by substantial evidence and is contrary to law.  Armijo contends the ALJ concluded he could perform light work by considering the following: 1)  his daily activities; 2) the consultative evaluation by Dr. Donna L. Deming; and 3) his credibility regarding his pain.  Armijo argues none of these factors, alone or taken as a whole, support the ALJ's conclusion that he has the ability to perform light work.

The Court disagrees.  The ALJ relied on Dr. Deming's report which was comprehensive.  Dr. Deming reported the following pertinent findings: 1) [patient] walks normally; 2) gait is not wide-based; 3) no devices are used to assist ambulation and none are needed; 4) [patient] got on and off the examination table without difficulty; 5) there was no respiratory distress caused by the exertion of this examination; 6) extremities are without cyanosis, clubbing, and there was trace of edema; 7) no varicosities and no changes of stasis dermatitis; no muscle wasting; 8) [patient] had full range of motion of all joints tested; 9) hands could be fully extended; 10) [patient] could grasp, pinch and write; 11) straight leg raising gave [patient] pain in the right sacroiliac joint with 70 degrees of elevation of the right lower extremity; 12) straight leg raising on the left was negative to 80 degrees; 13) there is no joint redness, tenderness, swelling or effusion; 14) hands could be fully extended, fists made, all fingers extended to the thumb; 15) [patient] could grasp, pinch and write; 16) [patient] could squat; 17) [patient] could walk on his toes and heels; 18) [patient] reports taking about eight aspirin per day and eight 200 mg. ibuprofen per day; 19) March 3, 1994 back x-ray indicates evidence of degenerative disc disease at the L5-S1 level; 20)

---

have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§  416.967(b).

deep tendon reflexes were 2+ and symmetrical throughout; 21) motor function was intact; 22) sensation was intact with the exception of there being pins and needles sensation with touch along the medial aspect of the left anterior tibia; 23) [patient] could feel light touch; and 23) there is no tremor, ataxia, spasticity or abnormal posturing. Tr. 109-16. In addition, Dr. Deming included a completed range of motion form. Tr. 117-18.

The ALJ also relied on Armijo's activities of daily living. Armijo reported he could do all activities of daily living without complaints, including housework and yard work. Tr. 132.

Finally, the ALJ found that "claimaint's testimony regarding the severity of his symptoms, including pain, was not credible to the extent it would prevent all work activity." Tr. 11. The records supports the ALJ's finding. A review of Armijo's medical records indicates Armijo did not seek treatment often. For example, on March 3, 1994, Armijo was seen at the General Orthopedic Clinic at University Hospital. At that time, Dr. Orcutt noted that Armijo was there for a follow-up but had not been seen since October of 1992. Tr. 135. On October 7, 1993, Armijo was seen by a doctor at UNM Hospital for back pain. The doctor's notes also state, "Did not seek medical attention since 1/14/93." Tr. 43. In addition, a report from the UNM Department of Orthopedics reported "no disabling pain or symptoms." Tr. 38. Finally, Armijo's treating physicians used aspirin and ibuprofen to treat his pain. Tr. 43, 44. On January 14, 1993, his treating physician reported "Told him we never ordered Tylenol with codeine for him." Tr. 44. Accordingly, the Court finds the ALJ's determination that Armijo's testimony regarding the severity of his symptoms, including pain, was not credible to the extent it would prevent all work activity is supported by substantial evidence and the ALJ applied correct legal standards.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards, and his decision is supported by substantial evidence. Armijo's Motion to Reverse and Remand Administrative Decision, filed June 7, 1999, should be denied and this case should be dismissed with prejudice.

JOE H. GALVAN
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.